UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                  Case No. 1:06-CR-69

WILSON ANTWANN DAVIS,           HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION

Defendant, Wilson Antwann Davis ("Davis"), has been charged in a two-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and with possession a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Davis moves to suppress evidence that law enforcement officers obtained during a warrantless entry into his home on December 12, 2005. For the reasons set forth below, the Court will deny the motion.

## Findings of Fact

On December 12, 2005, at approximately 7:00 a.m., officers from the Muskegon Heights Police Department arrived at 2632 Ninth Street, Muskegon, Michigan in response to a 911 call from Chrissy Vines ("Vines"), who was Davis' girlfriend. Vines stated that she was calling from her sister's house, which was located about two blocks from 2632 Ninth Street. Vines was upset and explained that Davis had come home to the 2632 Ninth Street residence during the early morning hours on December 12, 2005. She said that she and Davis had argued about money and, that after Davis started to choke her, she pushed him away and he punched her in the eye. She also said that Davis was asleep at the house when she left and that the back door was open. Vines also told the

911 dispatcher that Davis had a gun in the back of his pants. She told the dispatcher that Davis might still asleep be in the house, that the back door was open, and that they should not put any lights on when they went to the house. The officers interpreted this information as giving permission to enter Ms. Vines' house.

Officer Jimmy Fox went to the house to investigate and was subsequently joined by Officer Hanson. Officer Fox knocked on the front door of the house, but no one answered. The officers walked to the back of the house and found the door open. Officer Fox yelled into the house to see if someone would come out. When no one responded, the officers went into the house. They saw a light on in the basement and, after checking, found no one there. The officers then began checking other rooms in the house and found Davis asleep in a bedroom as Vines had described. Davis was fully clothed. The officers conducted a pat down of Davis and found the gun in Davis' pants, where Vines said it would be located.

### Conclusions of Law

In his motion, Davis contends that the evidence obtained during the warrantless search of his house must be suppressed because the search was not valid under either of the two recognized exceptions to the warrant requirement that would be applicable in this case: exigent circumstances and consent. Because the Court concludes that Vines' statements to the 911 dispatcher could reasonably be interpreted, and were interpreted, as consent for police officers to enter Vines' house, the Court finds it unnecessary to address the Government's exigent circumstances argument.

It is well-established that searches or seizures conducted without a warrant in a private residence are presumptively unreasonable unless one of the few recognized exceptions to the warrant requirement applies. See Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980). Consent is one of the exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041,

2

2043-44 (1973). A person may freely and voluntarily waive his Fourth Amendment rights by consenting to a search. See Davis v. United States, 328 U.S. 582, 593-94, 66 S. Ct. 1256, 1261-62 (1946). Consent must be freely and voluntarily given, and it "'may be in the form of words, gesture, or conduct.'" United States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004) (quoting United States v. Griffin, 530 F.2d 739, 742 (7th Cir. 1976)). Consent may be given by persons other than the defendant, including "'a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" United States v. Morgan, 435 F.3d 660, 663 (6th Cir. 2006) (quoting United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974)).

In this case, Vines testified that she resided at 2632 Ninth Street, Muskegon, Michigan, with her child and Davis, the father of her child, at the time of the incident. Moreover, Vines indicated to the 911 dispatcher that she lived at the residence. Thus, Vines had actual authority to give consent for the officers to enter the premises. In addition, although Vines did not say, "You may enter the house," her statements to the 911 dispatcher that: (1) Davis was inside the house; (2) the back door was open; and (3) that the officers should not put on their lights, could reasonably be interpreted as consent to enter the house. Moreover, Vines confirmed this when she concurred in the 911 dispatcher's statement that he or she was going to send officers to 2632 Ninth Street but would have them stop by Vines' sister's house first to see Vines. Accordingly, the officers could reasonably conclude, and did conclude, that Vines gave consent to enter the residence.

At the conclusion of the hearing held on August 25, 2006, the Court gave the parties additional time to address the issue of whether an occupant of a residence may give valid consent when she is not physically present at the residence. Davis did not submit a brief on the issue, and the Court has found no case holding that physical presence at the premises is required. Rather, there

3

need be only an objectively reasonable basis to conclude that the individual has authority to give consent, which was present in this case. See United States v. Williams, 138 F. App'x 743, 745 (6th Cir. 2005) (noting that a search is valid so long as the police reasonably believed that the consenting party had authority over the premises).

Finally, Davis cites the Supreme Court's recent decision in Georgia v. Randolph, 126 S. Ct. 1515 (2006), as support for his argument that there was no consent, but that case does not help him. In Randolph, the Court held that in a situation involving co-occupants who have common authority over a premises, the consent of one co-occupant to a search is invalid "when the other, who later seeks to suppress the evidence, is present at the scene and expressly refuses to consent." Id. at 1519. In that case, the estranged wife of the defendant gave police permission to search their marital residence for drugs, but the husband, who was present, "unequivocally refused." Id. Here, Davis was present in the house, but it is undisputed that he was asleep and did not raise any objection, even after the police knocked on the door and shouted into the house. Thus, his reliance upon Randolph is misplaced.

## **Conclusion**

For the foregoing reasons, the Court will deny Davis' motion to suppress evidence.

An Order consistent with this Opinion will be entered.


Dated:  September 14, 2006              /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE